**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOSHE LEICHNER,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                    Defendants. | Case No. EDCV 13-2317 JFW (SS)<br><br>**REPORT AND RECOMMENDATION OF**<br><br>**UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On December 10, 2013, Moshe Leichner, a federal prisoner then proceeding pro se, constructively filed a "Verified Complaint [and] Jury Trial Demand for Plaintiff's Claims of Civil Conspiracy and

Civil Rico under FTCA, 42 U.S.C. § 1983, 28 U.S.C. §§ 1332 & 1367, Bivens, and 18 U.S.C. §§ 1961 et seq."[1]  ("Complaint," Dkt. No. 3). The Complaint originally raised seven claims against sixteen Defendants arising from their alleged failure over a five-year period to provide Plaintiff with proper medical care for what doctors ultimately determined was bladder cancer.  On August 28, 2015, Plaintiff "amended" the Complaint by voluntarily dismissing two claims and nine Defendants.  (See Notice of Amendment, Dkt. No. 10).  On October 30, 2017, Plaintiff, now represented by pro bono counsel, voluntarily dismissed an additional four Defendants. (See Notice of Dismissal, Dkt. No. 111).   Three surviving Defendants and three causes of action remain in the "Amended Complaint."[2]

On December 26, 2017, Defendant Dr. Alexander Sinavsky filed the instant Motion to Dismiss ("Motion" or "MTD"), supported by the declaration of Autumn Norris, an Administrative Legal Assistant

---

[1] The "mailbox rule" applies to civil rights cases.  See Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009).  Pursuant to the mailbox rule, pro se prisoner legal filings are deemed filed on the date the prisoner delivers the document to prison officials for forwarding to the court clerk.  Id.  Because the Complaint did not attach a proof of service, the Court adopts the date in the signature block as the constructive filing date.  (See Complaint at 159).  Where possible, the Court will apply the mailbox rule to all of Plaintiff's legal filings discussed in this Report.

[2] Following the filing of Plaintiff's September 24, 2015 "Notice of Amendment," (Dkt. No. 10), then-presiding Magistrate Judge Carla M. Woehrle deemed the Complaint to have been "amended."  (Dkt. No. 11).  Accordingly, the Court will refer to the operative version of the Complaint, reflecting Plaintiff's voluntary dismissal of Defendants on both August 28, 2015 and October 30, 2017, as the "Amended Complaint."  The case was reassigned to the undersigned Magistrate Judge on April 7, 2016.  (Dkt. No. 41).

at the Federal Bureau of Prisons ("BOP") ("Norris Decl."). (Dkt. No. 112). Plaintiff filed an Opposition on January 9, 2018 ("Opp."), including the declaration of counsel Nicholas A. Belair ("Belair Decl."). (Dkt. No. 116). Dr. Sinavsky filed a Reply on January 16, 2018. ("Reply," Dkt. No. 117). On February 6, 2018, the Court held a hearing.

For the reasons stated below, it is recommended that the Court DENY Dr. Sinavsky's Motion to Dismiss without prejudice to reasserting a statute of limitations and/or qualified immunity defense on summary judgment. It is further recommended that the Court ORDER Dr. Sinavsky to file an Answer to the Amended Complaint within fourteen days of the District Judge's Order.

## II.

### ALLEGATIONS OF THE AMENDED COMPLAINT

This action is proceeding against:  (1) the United States of America; (2)  Dr. Alexander Sinavsky, a physician formerly employed at the Metropolitan Detention Center-Los Angeles ("MDC-LA"); and (3) Dr. Esther Nicholas-Arafiles, also a physician formerly employed at MDC-LA.  (Complaint ¶¶ 21, 25, 26; see also Dkt. No. 111 at 2).

The Court has previously summarized the facts, as alleged in the Amended Complaint, that are relevant to Plaintiff's surviving claims as follows:

Plaintiff was unjustly and unreasonably arrested on February 8, 2003 and transported to MDCLA. [Compl. ¶ 60.] In May 2003, while in pre-trial detention at MDCLA, Plaintiff discovered blood in his urine (hematuria). [Id. ¶ 63.] Plaintiff immediately sought treatment from the medical staff, who administered blood and urine tests but did not schedule a doctor's appointment for Plaintiff. [Id.]

In June 2003, Plaintiff again complained of hematuria and was seen by Dr. Nicholas-Arafiles, a physician at MDCLA. Plaintiff provided another specimen, but Dr. Nicholas-Arafiles told Plaintiff to "just ignore said medical condition," saying it would probably vanish, and denied his request to see a urologist. [Id. ¶¶ 63-65.] Plaintiff again complained of hematuria and severe pain in his lower back and pelvic region, but Dr. Nicholas-Arafiles told Plaintiff it's "all in your head" and otherwise ignored the complaint and denied his request to see a urologist. [Id. ¶¶ 66 67.]

In August 2003, Plaintiff was transferred to the San Bernardino County Jail, where he continued to experience various symptoms. . . . [Id. ¶¶ 68-70.]

In March 2004, after a hearing, United States Magistrate Judge Victor Kenton ordered Plaintiff

4

returned to MDCLA, and ordered that Plaintiff be given medical treatment. Plaintiff was returned to MDCLA on March 25, 2004, but was not given the court-ordered medical exam. [Id. ¶¶ 75-79.] Plaintiff remained at MDCLA until May 2005, during which time his condition worsened, his requests to see a urologist were denied, and he received no relief from his symptoms. [Id. ¶¶ 72-82, 84.] . . . [¶]

Plaintiff was at MDCLA sporadically from November 2005 through May 2006, and for the entire period from May 26, 2006 until March 2008. [Id. ¶ 90-91, 99.] He continued to experience hematuria and severe back and pelvic pain. [Id. ¶ 90] Plaintiff informed Dr. Sinavsky of these symptoms, and Dr. Sinavsky ordered blood and urine tests, but these tests did not diagnose cancer, and Sinavsky did not refer Plaintiff to a urologist. [Id.] During this time Plaintiff provided six to eight specimens, at least two of which indicated hematuria. [Id. ¶ 91.] Plaintiff repeatedly sought a urology appointment but was never given one. [Id.] Drs. Nicholas-Arafiles and Sinavsky were both treating Plaintiff during his time at MDCLA, and neither of them gave Plaintiff appropriate treatment or referred him to a urologist despite his repeated complaints and requests. [Id. ¶¶ 99-106.]

In May 2008, Plaintiff was transferred again, ultimately to the Federal Correctional Institution at Big Spring, Texas. On July 24, 2008, he was examined by an outside urologist, Dr. Razzak Jabur, who identified a large tumor, diagnosed Plaintiff with bladder carcinoma, and surgically removed the tumor. Dr. Jabur told Plaintiff, "It's unbelievable that your condition went untreated and neglected for so long. If a person went to see an Eye Doctor and you told the Eye Doctor that you're passing blood in the urine, the doctor would tell you to go and see a Urologist." [Id. ¶¶ 106-113.]

Plaintiff alleges that, as a result of the deliberately indifferent medical treatment he was given from 2003-2008, he unnecessarily suffered fear and extreme pain, his cancer became advanced, and he faces a higher risk of recurrence because the cancer was not removed sooner. [Id. ¶¶ 112-113.]

(Order Regarding Further Proceedings on PLRA Screening, Dkt. No. 9, at 6-9) (footnotes omitted).

The Amended Complaint raises three surviving claims. Count I alleges a claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for deliberate indifference to serious medical needs against Drs. Sinavsky and Nicholas-Arafiles. (Id. ¶¶ 25-26, 268-78). Count II alleges a medical negligence claim against the United States under the

6

Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. ("FTCA"). (Id. ¶¶ 21, 279-91). Count III alleges another FTCA claim against the United States for intentional infliction of emotional distress. (Id. ¶¶ 292-96). The remaining Counts have been affirmatively dismissed or mooted by the dismissal of various Defendants.[3]

## III.

## DR. SINAVSKY'S MOTION TO DISMISS

Dr. Sinavsky raises three grounds for dismissal of the claim against him. First, he argues that Plaintiff's claim is barred by the statute of limitations. (MTD at 4; Reply at 2-7). Second, he contends that the allegations fail to show that he was aware of and purposefully chose to disregard Plaintiff's serious medical needs. (MTD at 5-7; Reply at 7-8). Third, he argues that he is entitled to qualified immunity. (MTD at 7-10; Reply at 8-10).

## IV.

## STANDARDS GOVERNING MOTIONS TO DISMISS

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

---

[3] The United States filed an Answer to the Amended Complaint on December 18, 2015. (Dkt. No. 31). Dr. Nicholas-Arafiles filed an Answer on October 12, 2016. (Dkt. No. 70).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[,]" Twombly, 550 U.S. at 555, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (internal quotation marks and citation omitted).

"When ruling on a motion to dismiss, [the court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Colony Cove Props., LLC v. City of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (footnote, internal quotation marks and citations omitted).  The court must accept the complaint's allegations as true, Twombly, 550 U.S. at 555-56, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005).  However, the court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006).  Likewise, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Nonetheless, pro se pleadings are "to be liberally construed" and

8

are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

If the court finds that a complaint fails to state a claim, it must also decide whether to grant the plaintiff leave to amend. Even when a request to amend is not made, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs." Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir. 2005) (internal quotation marks and citation omitted). However, if amendment of the pleading would be futile, leave to amend is properly denied. See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002).

**V.**

**DISCUSSION**

**A.   Dr. Sinavsky's Statute Of Limitations Defense Cannot Be Determined On A Motion To Dismiss**

Dr. Sinavsky argues that Plaintiff's deliberate indifference claim is time-barred. (MTD at 4). According to Dr. Sinavsky, the claim accrued when Plaintiff saw him in "2005 and 2007, and at latest, in July 2008 when Plaintiff underwent surgery." (Id.). Plaintiff concedes that the applicable statute of limitations is two years, and is tolled for an additional two years due to Plaintiff's incarceration. (Id.) (citing Cal. Code Civ. Proc.

§§ 335.1(a) & 352.1). However, according to Defendants, even applying the four-year statute of limitations to the latest possible accrual date, the limitations period expired in July 2012, over seventeen months before Plaintiff initiated this action in December 2013. (MTD at 4).

Plaintiff contends that his claim accrued on July 30, 2008, when his bladder cancer was confirmed. (Opp. at 3). Plaintiff asserts that the relevant limitations period is a combined four years. (Id.). However, Plaintiff argues that his claim against Dr. Sinavsky is timely because the statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.[4] (Id.). Plaintiff states that he submitted his first

[4] The Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. Booth v. Churner, 532 U.S. 731, 733-34 (2001). A prisoner must pursue a remedy through all levels of appeal "as long as some action can be ordered in response to the complaint." Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005).

Bivens claims against prison staff are exhausted by presentation of the claims through the BOP grievance process. It begins with the prisoner's submission of an informal complaint using form BP-8 ("Request to Staff"). Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010) (citing 28 C.F.R. §§ 542.13-.15). If the BP-8 is denied, the prisoner may submit a "first level" "Request for Administrative Remedy" to the Warden using form BP-9. Nunez, 591 F.3d at 1219. If the Warden renders an adverse decision, the prisoner may appeal to the Regional Director using a "second level" form BP-10 ("Regional Administrative Remedy Appeal"). Id. Finally, the prisoner may appeal an adverse decision by the Regional Director to the Central Office (also called the General Counsel) of the BOP using a "third level" form BP-11 ("Central Office Administrative Remedy Appeal"). Id. at 1219-20. "Administrative exhaustion is complete when the General Counsel rules on the BP-11." Champion v. Smith, 2012 WL 930858, at *1 (E.D. Cal. Mar. 19, 2012); see also 28 C.F.R. § 542.15(a).

Tort claims against the United States follow an entirely separate exhaustion procedure. A tort claim is exhausted after the claim is presented to the appropriate federal agency and the claim is

grievance alleging the deliberate indifference by BOP physicians on December 29, 2009, which tolled the statute of limitations until his third level appeal was denied on November 26, 2010 (collectively, the "2009 Grievance"). (Opp. at 4) (citing Belair Decl., Exh. A at 3-6 & Exh. B at 7). Plaintiff further states that he pursued a second grievance on May 16, 2013, again alleging the deliberate indifference of BOP physicians (collectively, the "2013 Grievance"), which tolled the statute of limitations until December 9, 2013, when he mailed a "Notice of Exhaustion of Administrative Remedies" to the Clerk of Court for the Central District. (Opp. at 4) (citing Complaint, Dkt. No. 3-5 at 4, 7-8). Plaintiff maintains that these two periods tolled the running of the statute of limitations for eleven months and seven months respectively and that the combined eighteen months of additional tolling render this action timely. (Opp. at 4).

In reply, Dr. Sinavsky appears to argue that California's two-year statutory tolling for prisoner claims was intended to cover the exhaustion of administrative remedies and impliedly precludes "duplicative" tolling for that purpose. (Reply at 3-4). Even if additional tolling were available for exhaustion, Dr. Sinavsky contends that the 2009 Grievance would not toll the claim against

finally denied, or six months have passed without a final resolution. 28 U.S.C. § 2675(a). "A claim is presented properly to an agency within the meaning of 28 U.S.C. § 2675(a) when the agency is given sufficient written notice to commence investigation, and the claimant places a value on the claim." Avery v. United States, 680 F.2d 608, 610 (9th Cir. 1982). To satisfy the presentation requirement, a plaintiff "need only file a brief notice or statement with the relevant federal agency containing a general description of the time, place, cause and general nature of the injury and the amount of compensation demanded." Goodman v. United States, 298 F.3d 1048, 1055 (9th Cir. 2002).

him because that Grievance concerned the alleged deliberate indifference of a health care provider in Texas following Plaintiff's July 2008 operation, and was "unrelated" to the pre-surgery care at issue in this action. (Id. at 5).  Dr. Sinavsky further contends that the 2013 Grievance, which specifically alleged improper medical care at MDC-LA between 2003 and 2008, was patently untimely because "[n]othing prevented Plaintiff from filing [administrative] claims . . . in 2005, 2007 or 2009" to exhaust his pre-surgery claims and therefore similarly cannot toll the limitations period. (Id. at 6).  Furthermore, to the extent that the 2009 Grievance could be construed to encompass Plaintiff's pre-surgery claims, the 2013 Grievance would then be impermissibly duplicative. (Id. at 5).

### 1.   Standards

"'[F]ederal law determines when a civil rights claim accrues.'"  Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).  Under federal law, "a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action."  Douglas, 567 F.3d at 1109; Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004).

"Although federal law determines when a Bivens claim accrues, the law of the forum state determines the statute of limitations for such a claim."  Papa v. United States, 281 F.3d 1004, 1009 (9th Cir. 2002).  For civil rights claims, federal courts apply the

12

state "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).   Effective January 1, 2003, the California statute of limitations for personal injury actions is two years.  See Cal. Code Civ. Proc. § 335.1.  This limitations period is statutorily tolled for a period of two additional years for a person who is, "at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life."  See Cal. Code Civ. Proc. § 352.1(a).

In addition, the Ninth Circuit instructs that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process" required by the PLRA.  Brown, 422 F.3d at 943 (emphasis added).   This, too, comports with California law, which provides that "[w]here exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic:  It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding."  McDonald v. Antelope Valley Community College Dist., 45 Cal. 4th 88, 101 (2008) (emphasis added; internal quotation marks and citation omitted); see also Cal. Code Civ. Proc. § 356 (tolling applies whenever commencement of an action is statutorily prohibited).  Accordingly,

the PLRA's administrative exhaustion requirement provides a basis for invoking California's "automatic" equitable tolling doctrine.

Federal courts also apply the forum state's general law of equitable tolling. Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). California courts' "liberal application of the equitable tolling rules . . . rests upon the reasoning that a claim should not be barred 'unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed.'" Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting Collier v. City of Pasadena, 142 Cal. App. 3d 917, 191 (1983)); see also Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001) (quoting Cervantes and Collier); Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003) ("This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."). Under California law, a plaintiff will be relieved from the limitations bar upon satisfying a three-pronged test: "(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Fink, 192 F.3d at 916.

The statute of limitations may be equitably tolled at the outset of litigation if the complaint alleges facts sufficient to show such an entitlement. See Cervantes, 5 F.3d at 1276-77. However, "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not

14

generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal citations and quotation marks omitted); see also Daviton, 241 F.3d at 1140 ("only in the rare case" may the analysis of California's equitable tolling doctrine be resolved at the pleading stage); Cervantes, 5 F.3d at 1276 ("California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation.").  "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  Supermail Cargo, 68 F.3d at 1206 (9th Cir. 1995) (internal citations and quotation marks omitted); see also Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Supermail Cargo).

### 2.   Prior Proceedings

To address Dr. Sinavsky's statute of limitations defense, it is necessary to review in some detail the chronology of Plaintiff's efforts to exhaust his constitutional and tort claims, as these issues are inter-related.   In turn, Plaintiff's pursuit of administrative remedies in 2009 and 2013 must be considered in the context of another civil rights action that Plaintiff filed in this Court in 2009, which was dismissed without prejudice in 2013.[5]  (See

---

[5] The Court takes judicial notice of Plaintiff's prior actions in this Court.  See In re Korean Air Lines Co., Ltd., 642 F.3d 685,

Leichner v. United States of America, et al., C.D. Cal. EDCV 09-0006 JFW (CW) ("Prior Action"), Dkt. No. 1).

On December 24, 2008, approximately five months after his bladder surgery, Plaintiff filed a civil complaint in this Court raising claims concerning the medical care he had received between 2003 and July 2008, including the care at MDC-LA. (Prior Action, Dkt. No. 1).[6]  The Court dismissed the Complaint with leave to amend seven and a half months later, on August 11, 2009.  (Id., Dkt. No. 10).  Plaintiff constructively filed a First Amended Complaint ("FAC") on October 17, 2009.  (Id., Dkt. No. 19, at 37).

On December 29, 2009, approximately one year after initiating the Prior Action, Plaintiff began pursuing the 2009 Grievance. (Belair Decl., Exh. A at 3-6).  While Plaintiff claimed he was submitting the 2009 Grievance "in tandem with [his] civil suit" (i.e., the Prior Action), the grievance stated the following:

"I, Moshe Leichner, hereby make allegations informally including but not limited to joint and several liability for the ongoing individual and collective negligence, reckless disregard and gross negligence on behalf of Dr. Jorge Partida, M.D., C.D. (FCI-Big Spring) in conjunction with the Federal Bureau of Prisons, its officers, agents and employees, named or unnamed from May 2003

---

689 n.1 (9th Cir. 2011) (a court may take judicial notice of a court's own records in other cases and the records of other courts).
[6] Dr. Sinavsky was not a named Defendant in any pleading in the Prior Action.  (Prior Action, Dkt. Nos. 1, 19, 51).

16

to the present and ongoing for the crime, against my person of deliberate indifference. (Dkt. 116-1 at 2-4)."[7]

While Plaintiff specifically complained that Dr. Jorge Partida at the Federal Correctional Institution at Big Spring, Texas was refusing to heed the urologist's post-surgery recommendations that Plaintiff receive a CT scan, MRI and a follow-up urologist consult, he also notified the BOP that he was complaining about "deliberate indifference" from "May 2003 to the present." (Id. at 4). Plaintiff appealed adverse determinations of the 2009 Grievance through all levels of the administrative appeals process, which culminated in the denial of his third-level appeal on November 26, 2010. (Id., Exh. B at 7).

On March 14, 2012, two years and four months after Plaintiff filed the FAC, the Court dismissed the FAC with leave to amend. (Prior Action, Dkt. No. 45). Plaintiff constructively filed a Second Amended Complaint ("SAC") on May 25, 2012. (Id., Dkt. No. 51 at 46). On July 6, 2012, the Court ordered service of the SAC by the United States Marshal. (Id., Dkt. No. 53). Process receipts and returns were docketed between November 20, 2012 and January 22, 2013 reflecting service on some, but not all, of the named Defendants. (Id., Dkt. Nos. 59, 63, 69). After receiving an extension, (id., Dkt. No. 65), Defendants jointly filed a motion

---

[7] While Defendant argues that the 2009 grievance only involved conduct by Dr. Partida, the Court finds that Plaintiff's claim for "collective negligence" and "deliberate indifference" from "May 2003 to the present" could reasonably be construed as placing Defendant on notice that Plaintiff was complaining about Dr. Sinavsky's conduct as well as Dr. Partida and other BOP employees.

17

to dismiss the SAC on February 28, 2013, alleging in part that Plaintiff had not administratively exhausted his claims before filing suit.  (Id., Dkt. No. 71, at 4-6).

On May 16, 2013, Plaintiff filed a second-level appeal concerning the 2013 Grievance.[8]  (See Complaint, Dkt. No. 3-5, at 7-8).  Plaintiff filed a third-level appeal of the 2013 Grievance on June 27, 2013.  (Id. at 5-6).  Separately, on June 12, 2013, the Department of Justice notified Plaintiff that it was forwarding his FTCA claim to the BOP for agency consideration.  (Id. at 1).

On July 12, 2013, Plaintiff notified the Court in the Prior Action that he was "seeking exhaustion of his administrative remedies under the PLRA and FTCA so as to enable [him] the opportunity to refile this suit at the proper time" if the Court determined that he had not cured the exhaustion defect.  (Prior Action, Dkt. No. 76 at 2).  Plaintiff asked that the Prior Action be voluntarily dismissed without prejudice if the defect was fatal. (Id.).  On September 12, 2013, the Court granted Plaintiff's request and dismissed the action without prejudice for failure to exhaust.  (Id., Dkt. No. 77, at 6).

On September 24, 2013, Plaintiff submitted an Inmate Request to Staff complaining that he had not received a decision on his third-level administrative appeal.  (Complaint, Dkt. No. 3-5, at 12).  Staff responded the next day, stating that "[p]er policy, if

---

[8] The record does not reflect when or if Plaintiff filed an informal complaint or first-level appeal related to the 2013 Grievance.

18

you have received no response and it is past the extension date, you can consider the request denied and file through the appropriate U.S. District Court. It is recommended you file a tort claim if this is pertaining to money damages." (Id.).

On October 16, 2013, Plaintiff wrote a letter to the BOP asking for confirmation that the agency had received a copy of his FTCA claim from the Department of Justice.[9] (Id. at 3). On December 9, 2013, Plaintiff sent a "Notice of Exhaustion of Administrative Remedies" to the Clerk of Court for the Central District of California asking that the Court take "judicial notice" that he had taken the necessary steps to exhaust his claims. (Id. at 4). On the following day, December 10, 2013, Plaintiff constructively filed the instant action.

**3. Discussion**

The Parties generally agree that Plaintiff's claims accrued on July 30, 2008, when his bladder tumor was surgically removed, and that he constructively filed this action on December 10, 2013. The time that elapsed between those two events is 5 years, 4 months, 10 days. Accordingly, even taking into account California's two-year statute of limitations for personal injury actions and the additional two-year statutory tolling for inmate claims, Cal. Code Civ. Proc. §§ 335.1 & 352.1(a), the instant action would be untimely absent some form of equitable tolling.

---

[9] The record does not reflect whether Plaintiff received a response from the BOP regarding his FTCA claim.

Contrary to Dr. Sinavsky's contention, the statute of limitations is tolled while a prisoner exhausts his claims. This "automatic" equitable tolling is required both by the Ninth Circuit and California law. See Brown, 422 F.3d at 943; McDonald, 45 Cal. 4th at 101. If, as Plaintiff urges, the Court applied both the eleven months it took to fully exhaust the 2009 Grievance and the seven months he claims it took to exhaust the 2013 Grievance,[10] the filing of this action would fall comfortably within the four-year statute of limitations. The Court finds that the 2009 grievance, which specifically complained of the BOP's medical care from May 2003 to the present, placed Defendant on notice of the present claims. See Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (a prisoner need only "alert prison officials to a problem") (quoting

---

[10] The record before the Court does not permit a precise determination of how long it took to exhaust the 2013 Grievance because it does not indicate when Plaintiff started the 2013 Grievance process. The first document in the record pertaining to the 2013 Grievance is the second-level appeal dated May 16, 2013. (Complaint, Dkt. No. 3-5, at 7).

The Court also disagrees that the termination of the 2013 Grievance process should be measured, as Plaintiff now contends, by Plaintiff's pre-filing letter to the Court Clerk dated December 9, 2013, asking for "judicial notice" of the exhaustion of his claims. (See Opp. at 4; see also Complaint, Dkt. No. 3-5, at 4). BOP regulations provide that if an inmate does not receive a response to a third-level appeal "within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 524.18. The Amended Complaint attaches a receipt from the Central Office setting September 3, 2013 as the extended response deadline for Plaintiff's third level appeal. (Complaint, Dkt. No. 3-5, at 11). Accordingly, even assuming, without deciding, that the appeals were not otherwise defective, Plaintiff's constitutional claims were deemed exhausted on September 3, 2013, as he admits in the Amended Complaint. (See id. ¶ 57). The Amended Complaint further alleges that Plaintiff's FTCA claims were exhausted on December 3, 2013. (Id. ¶ 58).

Jones v. Bock, 549 U.S. 199, 219 (2997); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cirl. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not law groundwork for litigation"). The grievance "need not include legal terminology or legal theories," nor is it necessary to "provide personal notice to a particular official that he may be sued." Reyes, 810 F.3d at 659 (citations omitted). Thus, prison officials should have began their investigation into Plaintiff's claims involving his medical care dating back to 2003, including Dr. Sinavsky's treatment of Plaintiff, when they received the 2009 grievance. The statute would be tolled while that grievance was exhausted.

Moreover, "automatic" equitable tolling for exhaustion does not comprise the entirety of the Court's equitable tolling analysis. Viewed through the prism of the Prior Action, it is evident that Plaintiff did not sit idly by after his July 30, 2008 operation to pursue his claims concerning his pre-surgery care. Instead, he constructively filed the Prior Action within five months of the operation. Once Plaintiff learned of Defendants' contentions regarding exhaustion, he very quickly began the exhaustion process, to "enable [him] the opportunity to refile" his claims in a separate lawsuit after exhaustion was complete. (Prior Action, Dkt. No. 76 at 2). That sequence of events -- the filing of an unexhausted complaint, the discovery that claims must be exhausted prior to filing, a belated attempt to exhaust, and dismissal of the complaint without prejudice -- is not uncommon,

and under some circumstances, would not necessarily provide grounds for equitable tolling.

However, the extreme delay between the constructive filing of the Prior Action on December 24, 2008 and the February 28, 2013 filing of the motion to dismiss takes this case out of the realm of "most circumstances."  That delay lasted four years, two months and four days -- longer than the entire statute of limitations period generally applying to prisoner claims.  Accordingly, once Plaintiff learned of the exhaustion requirement, the Court's delay made it impossible for him to exhaust and refile his claims, even though he moved promptly to file suit after his claims accrued.

Plaintiff is not entirely, or even primarily, responsible for the significant delays preceding the filing of Defendants' Motion to Dismiss in the Prior Action.  While the Court dismissed Plaintiff's claims twice, requiring him to draft and file two amended complaints, Plaintiff does not appear to have unduly delayed filing his amended complaints.  Plaintiff filed both the First Amended Complaint and the Second Amended Complaint in the Prior Action approximately ten weeks after the respective dismissal orders issued.  (See Prior Action, Dkt. Nos. 10, 19 (FAC) & 45, 51 (SAC)).  These intervals combined account for approximately five months of the limitations period.  In contrast, there was a delay of over seven months between the constructive filing of the original Complaint (December 24, 2008) and the Court's dismissal of that pleading with leave to amend (August 11, 2009), (id., Dkt. Nos. 1, 10), and two years and four months between Plaintiff's

22

filing of the FAC (October 17, 2009) and the Court's dismissal of the FAC with leave to amend (March 14, 2012).[11]  (See id., Dkt. Nos. 19, 45).  Additionally, there was a delay of nearly eight months between the date the Court directed the U.S. Marshal to serve the SAC (July 6, 2012) and the filing of the motion to dismiss (February 28, 2013).  (Id., Dkt. Nos. 53, 71).  Combined, these three periods account for over three and a half years of the four-year limitations period.

Had these delays not occurred, Plaintiff would have learned about the exhaustion requirement much sooner and would have been able to remedy any alleged failure to exhaust comfortably within the limitations period.  Instead, the motion to dismiss in the Prior Action was not filed until after the four-year statute of limitations period had already expired.  Where a filing deadline lapses due to delays beyond the plaintiff's control, including those attributable to the Court, equitable tolling may apply.  For example, in Kwai Fun Wong v. Beebe, 732 F.3d 1030 (9th Cir. 2013), aff'd and remanded sub nom. United States v. Kwai Fun Wong, 135 S. Ct. 1625 (2015), plaintiff filed an action while simultaneously seeking to exhaust an unpled FTCA claim.  When the FTCA claim was exhausted, plaintiff filed a motion for leave to amend to add the newly-exhausted claim.  Id. at 1033-34.  Pursuant to the FTCA, plaintiff was required to present her claim to the district court within six months of the agency's denial.  However, the Magistrate

---

[11] On April 1, 2011, eighteen months after filing the FAC, Plaintiff filed a motion requesting that the Court either screen the FAC or order it served.  (Prior Action, Dkt. No. 43).

Judge did not issue a Report and Recommendation recommending that the motion for leave to amend be granted until five months after the motion for leave was filed, and the District Judge did not issue an order accepting the Magistrate Judge's recommendation until three weeks after the six-month FTCA filing deadline had passed. Id. at 1034. Emphasizing that the trial court did not act on plaintiff's motion for leave to amend until after the statute of limitations had run, the Ninth Circuit concluded that these "circumstances easily justif[ied] equitable tolling" because the delay was beyond plaintiff's control. Id. at 1052.

Given the unique set of impediments to the timely resolution of the Prior Action, Plaintiff would appear to be entitled to equitable tolling for at least two and a half years to account for delays caused by the Court and the Marshal Service, which would bring the instant action well within the limitations period. Plaintiff acted diligently and in good faith upon learning of his exhaustion error. Under California's equitable tolling rules, the Court must also consider notice and prejudice to the defendant in allowing a claim to go forward. While there may be some question as to whether Dr. Sinavsky received timely notice of the instant claim, the Court notes that at least part of any delay is due to the fact that the BOP would not reveal his last known address to the United States Marshal Service without further proceedings. (See Dkt. No. 21) (process receipt and return reflecting that summons was unexecuted on Dr. Sinavsky because the BOP would not provide a forwarding address absent a court order). Furthermore, there is no evidence before the Court conclusively showing when

Dr. Sinavsky received actual notice, or if he suffered any prejudice, both of which are matters that are ill-suited for resolution on a motion to dismiss.

Accordingly, it is recommended that Dr. Sinavsky's Motion be DENIED to the extent that it claims that Plaintiff's action is untimely.  It is further recommended that dismissal be without prejudice to asserting a statute of limitations defense on summary judgment contingent upon a showing of actual prejudice.

**B.**      **The Complaint Adequately Alleges A Claim For Deliberate Indifference Against Dr. Sinavsky**

Dr. Sinavsky argues that the Amended Complaint fails to state a deliberate indifference claim against him because even assuming that Plaintiff's hematuria and complaints of lower back and pelvic pain constituted a serious medical need, Plaintiff has not sufficiently alleged that Defendant was aware of and consciously disregarded that need.  (MTD at 5-7).  The Court disagrees.

The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted).  A defendant is liable for the delay or denial of a prisoner's medical care in violation of the Eighth Amendment only when the defendant is "deliberately indifferent" to the prisoner's known "serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

25

To establish a "serious medical need," the prisoner must demonstrate that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citation omitted). For example, "'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.'" Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), reversed on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

To establish "deliberate indifference" to such a need, the prisoner must demonstrate: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (quoting Jett, 439 F.3d at 1096). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. The defendant must have been subjectively aware of a serious risk of harm and must have consciously disregarded that risk. See Farmer v. Brennan, 511 U.S. 825, 845 (1994).

\\
\\
\\

26

Deliberate indifference therefore requires "a purposeful act or failure to respond to a prisoner's pain or possible medical need . . . ." Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1081 (9th Cir. 2013) (quoting Jett, 439 F.3d at 1096) (emphasis added)). Mere malpractice or "even gross negligence" in the provision of medical care does not establish a deliberate indifference claim. Lemire, 726 F.3d at 1082; Wilhelm, 680 F.3d at 1123 (a "negligent misdiagnosis" does not state a claim for deliberate indifference). In addition, "'[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference.'" Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc)).

The allegations against Dr. Sinavsky satisfy both prongs of a deliberate indifference claim. There is no serious dispute that Plaintiff has adequately alleged a serious medical need. The Amended Complaint states that while housed at MDC-LA between 2003 and 2008, Plaintiff suffered from chronic hematuria, with accompanying severe back and pelvic pain. (Complaint ¶¶ 63, 90-91, 99). Plaintiff further alleges that the presence of blood in urine would signal to any physician that the patient must see a urologist, regardless of test results. (Id. ¶¶ 106-13). Finally, Plaintiff states that because his condition was not properly treated at MDC-LA, he suffered years of unnecessary pain and

anxiety, his bladder cancer became more advanced, and he faces a higher risk of recurrence.  (Id. ¶¶  112-13).

Plaintiff also adequately alleges that Dr. Sinavsky was deliberately indifferent to his serious medical needs.  Plaintiff states that he repeatedly told Dr. Sinavsky of his symptoms and requested a urology consult, but Dr. Sinavsky made no referral, even though at least two of Plaintiff's specimens confirmed his complaints of hematuria.  (Id. ¶¶ 90-106).  While Plaintiff concedes that the tests Dr. Sinavsky ordered did not diagnose cancer, his hematuria and severe pain persisted and worsened. (Id.).  Once Plaintiff was permitted to see a urologist after being transferred from MDC-LA to a prison in Texas, his cancer was quickly diagnosed and he underwent an operation within a week of the diagnosis to remove a large tumor.  (Id. ¶¶ 108-12).

Dr. Sinavsky's primary argument is that because he responded to Plaintiff's complaints by ordering blood and urine tests to determine the cause of the hematuria, none of which detected Plaintiff's cancer, he could not have been deliberately indifferent to Plaintiff's serious medical needs.  (MTD at 5-6).  However, Dr. Sinavsky does not address Plaintiff's contention that even though Plaintiff's test results did not reveal the cause of his symptoms, Dr. Sinavsky knew that Plaintiff's hematuria and severe pain persisted, yet refused to further investigate and treat those symptoms by referring Plaintiff to a urologist.
\\
\\

28

Direct evidence of a prison official's knowledge of a substantial risk of harm, as would have been clearly present had Dr. Sinavsky ignored test results affirmatively showing that Plaintiff had cancer, is not necessary to allege or even prove a defendant's subjective awareness, as this inquiry is "subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. Many courts have found that a prisoner's repeated requests to a prison official for medical treatment may suffice to impute the official's subjective knowledge. See, e.g., Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998) (allegations that prison physician disregarded plaintiff's repeated requests for epilepsy medication presented "the prototypical case of deliberate indifference, an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury"); Harris v. Hegmann, 198 F.3d 153, 159-60 (5th Cir. 1999) (allegations that officers ignored an inmate's repeated requests for medical treatment and complaints of excruciating pain stated a deliberate indifference claim).

Plaintiff's allegations that Dr. Sinavsky knew that Plaintiff chronically had blood in his urine over a period of years yet still did not refer Plaintiff to a urologist adequately state a claim for deliberate indifference sufficient to survive a 12(b)(6) motion. Accordingly, it is recommended that Dr. Sinavsky's Motion to Dismiss be DENIED to the extent that it is based on Plaintiff's purported failure to state a deliberate indifference claim.

**C.    Dr. Sinavsky's Qualified Immunity Defense Is Premature**

Dr. Sinavsky also argues that he is entitled to qualified immunity because it is not unreasonable to decline to authorize a urology consult when, as here, test results do not detect cancer or other abnormalities.  (MTD at 7-10).  The record is not sufficiently developed to resolve Dr. Sinavsky's immunity claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Hopkins v. Bonvicino, 573 F.3d 752, 762 (9th Cir. 2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  Indeed, "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.'"  Pearson, 555 U.S. at 231 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).

In analyzing whether qualified immunity applies, a court must determine "whether, taken in the light most favorable to [the plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation."  Bull v. City and County

of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010) (internal quotation marks omitted; brackets in original). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). A finding that a government official's conduct violates clearly established law requires that "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). A district court is not required to address these inquiries in a particular order, but may instead "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 226; see also Bull, 595 F.3d at 971.

By 2003, when Plaintiff began seeking medical care at MDC-LA, it was beyond serious dispute that a prison physician had a duty to address a prisoner's repeated complaints of chronic pain and other potentially severe physical symptoms. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin, 974 F.2d at 1059-60 (deliberate indifference to "the existence of chronic and substantial pain" violates the Eighth Amendment); Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."); Maynard v. New Jersey, 719 F. Supp. 292, 293 (D. N.J. 1989) (complaint adequately alleged deliberate indifference claim based

on medical staff's failure for four months to diagnose prisoner's AIDS while ineffectively treating his multiple symptoms with cold medications).

Plaintiff alleges that he experienced chronic, debilitating pain and blood in his urine for several years, and that Dr. Sinavsky, despite knowing of the persistence of his symptoms, refused to authorize a urology consult. Without further development of the factual record, it is difficult to determine whether Dr. Sinavsky's specific actions entitle him to qualified immunity. The Motion's nearly systematic reliance on summary judgment cases in support of Dr. Sinavsky's qualified immunity argument is unavailing because in those cases, the factual record had been developed and an informed decision could be made. (See MTD at 9-10) (citing Hamby, 821 F.3d at 1093 (MSJ); Taylor v. Barkes, 135 S. Ct. 2042, 2045 (2015) (MSJ); Grady v. Robinson, 14 F. App'x 964, 965 (9th Cir. 2001) (MSJ)). Dr. Sinavsky's reliance on Bess v. Campbell, 2013 WL 3816997 (C.D. Cal. July 23, 2013), is similarly misplaced. (MTD at 9). Although the Bess Court dismissed plaintiff's deliberate indifference claims with prejudice on a motion to dismiss, the facts alleged are distinguishable. In Bess, plaintiff alleged that two doctors, one whom he saw once, and another whom he saw twice, were deliberately indifferent because they made "uninformed" treatment decisions regarding his hematuria by prescribing antibiotics based on tests that failed to reveal his bladder cancer. Bess, 2013 WL 3816997, at *10. Plaintiff also alleged that a third doctor, who saw him over a period of months, failed to conduct further tests to rule out cancer. Id. at *11.

32

However, that doctor "put in an urgent referral for Plaintiff to see a urologist." Id. (emphasis in original). Here, Plaintiff alleges that Dr. Sinavsky treated him for chronic hematuria over a period of years without ever referring him to a urologist.

As the Ninth Circuit has recognized, a motion to dismiss on qualified immunity grounds puts the court in the difficult position of attempting to decide "far-reaching constitutional questions on a nonexistent factual record." Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004). While a defendant has the right to assert a qualified immunity defense on a motion to dismiss, "the exercise of that authority is not a wise choice in every case," particularly when discovery would "readily reveal" whether plaintiff's claims were baseless. Id. Accordingly, it is recommended that Dr. Sinavsky's Motion be DENIED to the extent that it is based on his entitlement to qualified immunity, without prejudice to reasserting a qualified immunity defense in a motion for summary judgment.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**VI.**

**RECOMMENDATION**

Consistent with the foregoing, IT IS RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation; (2) DENYING Dr. Sinavsky's Motion to Dismiss, without prejudice to asserting a statute of limitations and/or qualified immunity defense on summary judgment; and (3) ORDERING Dr. Sinavsky to file an Answer to the Amended Complaint within fourteen days of the date of the District Judge's Order Accepting this Report and Recommendation.

DATED:  February 9, 2018

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.